14236

RISER v. INDUSTRIAL LIFE & HEALTH INS. CO.

(184 S. E., 148)

*Messrs. Tobias & Turner,* for appellant,

*S. Evelyn Lester,* for respondent,

February 20, 1936.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

Damages, both actual and punitive, are sought in this action for the alleged fraudulent cancellation of a policy of insurance. The trial of the case resulted in a verdict for the plaintiff, and the defendant appeals.

438

The only question raised by the exceptions is whether there was error in refusing the company's motion for a directed verdict, made upon the ground that it conclusively appeared "that the policy was finally lapsed through no one's fault, other than that of the plaintiff herself." A review of the testimony would serve no useful purpose. The record, as we read it, discloses that the evidence required the submission of the case to jury on the material issues involved. Of course, it is elementary that, on a motion of this kind, the testimony, and all inferences to be drawn therefrom, must be construed most favorably to the plaintiff; and that evidence tending to support the allegations of the complaint will be taken as true. Furthermore, as we have repeatedly held, it is not for the Court to weigh the testimony or to determine the credibility of witnesses, these being matters entirely for the jury.

As a majority of the Justices are in accord with the conclusion here reached, all exceptions are overruled and the judgment of the Richland County Court is affirmed.

Messrs. Justices Carter and Fishburne concur.

Messrs. Justices Bonham and Baker dissent.

Mr. Justice Baker (dissenting) : Mamie Riser, the respondent, having recovered judgment for both actual and punitive damages against Industrial Life & Health Insurance Company, the appellant, on account of the alleged fraudulent cancellation of an insurance policy, the appellant insurance company has appealed to this Court.

The policy of insurance involved was issued by appellant on July 20, 1925, and in consideration of the payment by respondent of 15 cents weekly it provided for the payment to the respondent of $3.00 weekly sick benefit and for the payment to the beneficiary named in the policy of $30.00 upon respondent's death. As a basis of recovery it was in substance alleged that pursuant to and in execution of a fraudulent design to cancel the policy, the appellant failed to give proper credits for premium payments, that it consciously and corruptly demanded and required the payment of greater

sums than were justly due in order to keep the policy in effect, and that upon respondent's failure to comply with these improper and unjust demands her policy was lapsed.

At the conclusion of the testimony, the Court refused a motion by the appellant for a directed verdict in its favor made on the ground that the lapse of the respondent's policy was brought about wholly through her own fault, and the only error assigned by the several grounds of appeal is the refusal of the Court below to direct a verdict in favor of the appellant.

In addition to the policy of insurance now in question, the respondent carried in the same company other insurance on herself and also several policies on members of her family. She undertook to pay the weekly premiums on all of these policies, and she had several premium books on which the various payments were to be entered. Sometimes the weekly payments were not promptly or fully met, and on some occasions there would be a partial payment on the total amount in arrears, to be divided between the several policies. It would seem that this method of handling the payment of her insurance premiums was an invitation to some ultimate confusion or error; but when it also appears, as it does, that the payments were sometimes made to the company's field collector and sometimes at the office of the company, sometimes being made by respondent herself and sometimes by her daughter, with whom respondent says she left the money to make the payments, and that on at least one occasion respondent's daughter, as she says, sent payments to the appellant's office by her little girl only ten years old, it would seem rather extraordinary if some mistake or confusion in the credits, or the proper disposition of the payments between the several policies, had failed to occur.

As was not at all unreasonably to be anticipated, in the summer of 1934 the accounts of respondent and appellant were not in accord, and a difference arose between them as to the payments previously made. Respondent thereupon went to the office of the company for the purpose of having

the payments claimed to have been made by her credited, and her books correctly written up. This was not only the natural thing for respondent to do, but under the circumstances it was also nothing more, in reasonable fairness, than she ought to have done. It cannot be conceived that her somewhat intricate and devious methods of handling her payments were of the company's choosing, and they doubtless were adopted by respondent for her own convenience. Under such circumstances both common sense and ordinary fairness would seem to require some spirit of conciliation and co-operation to the end that there might be a fair opportunity to correct any errors entering into the accounts, which for all that then appeared might be entirely innocent of any corrupt intention. Indeed, in all the complex relations of modern life, it is scarcely to be expected that irritations and differences will not arise in business relations, either through inadvertent mistake or even through the design or dishonesty of unfaithful agents and servants, yet, if the party in the wrong is willing to accede to the contentions of the other party and redress the grievance, it is difficult to apprehend how anything more may properly be required by the law or the demands of natural justice. This Court will at least not view with any special approbation the causes of those who are more astute in finding a possible cause of action than in the exercise of a reasonable spirit of accommodation to the end that their controversies may be composed.

From a careful consideration of all the testimony, the conclusion seems impossible to avoid that the appellant, after being approached by respondent, not only offered but did everything reasonably possible to satisfy her, and to accede to her demands. When she came to the office of the appellant, she first contacted some of the subordinate employees, who, upon a payment then being made by the respondent, executed to her a so-called "revival receipt," providing, however, that the appellant incurred no obligation until all arrears were paid, and only then after five weeks from the acceptance of the application by the appellant. This appears to

have been wholly unsatisfactory to the respondent as an adjustment of her controversy, but appellant's manager, E. B. Meetze, who had no previous knowledge or connection with the controversy, upon discovering her dissatisfaction, called her into his office and attempted to satisfy her. Mr. Meetze testified as follows: "I told her to come on in the office and let's get the matter straight. I said 'We would rather give you a dollar than beat you out of a dime.' I carried her to the office, and she said 'I am late for my work, and I might lose my job', and she said 'I have to go now, but I will come back to see you.' She took the receipt she has now and left—I was not present when she made the payment—and promised me she would come back, and give me a chance to straighten the matter out, and apparently she was satisfied." Mr. Meetze further said: "I only talked to her one time, when I went in and found her there. I carried her in the office and told her that we wanted to give her the benefit of the doubt, and do anything possible to make her a satisfied policyholder, and I said: 'Now, Mamie, if you will tell me how much it is, I will be glad to straighten it up,' and she said 'I have to go to work, but I will be back.' "

It also appears that respondent consulted Mr. Monteith, a member of the Columbia bar, for the purpose of having her claimed credits allowed, and acting in her behalf Mr. Monteith had a conference with appellant's manager, who assured him to his satisfaction that the appellant would be glad to satisfy the respondent, and accede to her demands, of which Mr. Monteith duly advised the respondent.

While it is true that the foregoing testimony comes from appellant's witnesses, yet in every substantial respect it is fully corroborated by the respondent herself. There may be, and without doubt is, some inconsistency and self-contradiction in respondent's testimony on account of her apparent withdrawal of some of her admissions, as the trial Judge indicated in refusing the motion for a directed verdict, yet, after fully allowing for all that, we are unable to construe her testimony otherwise than a clear and distinct admission

that the appellant offered to accede to her demands and to redress her alleged grievance forthwith. Instead of then accepting everything she demanded, she temporized and promised to come back, but voluntarily failed to do so. Although there was no remaining room for controversy with the company, since respondent's contention had been conceded, still she did not come back, as she promised, nor accept the allowance of all she claimed, but on the contrary elected to bring the present suit, which could only be justified upon the theory that her rights had been denied and redress refused, and upon the conception that the appellant had not only repudiated its contract, but had done so fraudulently and corruptly.

We cannot assent to respondent's conception of the situation. If the appellant was willing and offering to keep the contract in force, even to the extent of acceding to respondent's contentions, it is difficult to apprehend how she could claim a lapse of the contract on account of the acts of the appellant. If the appellant, upon respondent's demand, was willing to relinquish its contentions and to accept the contentions of respondent, so as to continue the policy contract in full effect, as to which the testimony does not afford any reasonable ground for doubt, it is clearly impossible to assign to the appellant such a repudiation of its obligations under the contract as to serve as a basis for a cause of action in favor of the respondent based upon the theory of an unlawful cancellation.

The appellant in effect said to the respondent that while it had claimed that the respondent's obligations under the contract were in default, yet it would waive that claim, and admit full performance by the respondent so that appellant's obligations under the contract would remain unaffected. Surely it cannot be claimed that it is a breach of a contract, much less a fraudulent breach, for a party to the contract merely to advance a contention, even though not justified in law, in relation to the binding effect of the contract, which is neither enforced, insisted upon, nor acted upon, but on the contrary is renounced and abandoned upon the insistence of

the other party; yet this is all that the appellant at most can be said to have done. As somewhat pertinently said by the Court in *Hubbard v. Woodmen of the World,* 125 S. C., 154; 118 S. E., 418, 420: "If the society's letters of February, April, and May, 1922, were sufficient to support an inference of waiver—that is, of an intention on the part of the society to relinquish the right to avoid the policy for any cause then existing—then there was no repudiation of the contract. The contentions as to waiver and repudiation are incompatible." In this case, upon respondent's insistence, the appellant indisputably waived its contentions, as respondent admits. It can scarcely at the same time be claimed that it repudiated its obligations.

Much importance is attached by the respondent to the fact that the so-called "revival receipt" did not in fact purport to immediately revive the policy at all, but we think this has no substantial bearing on the case, because appellant's offer and effort to meet the demands of the respondent were after the execution of the receipt, and any possible effect of the receipt upon the rights of the respondent was clearly waived and renounced by the appellant.

When the appellant offered to adjust respondent's grievance, it is not suggested that any claim under the policy had then accrued, and there was clearly no loss up to that time of any benefits of the policy on account of the controversy, nor any other loss to respondent other than possibly a little inconvenience and loss of time, the responsibility for which may just as fairly be charged to her as to the appellant on account of her indifferent and complicated methods of handling her payments. Nor can the policy be said to have been thereafter lapsed by the appellant as a result of the controversy, so as to entail upon respondent the loss of future benefits, because appellant offered to accept respondent's contention as to the rights of the parties, and to continue the policy in force, as if no controversy had arisen. It is therefore impossible to assign this controversy as to the state of

the accounts of the parties as the cause of any damage to the respondent with which the appellant may be charged.

Although the respondent had fair opportunity to continue her policy in full force in accordance with her own contentions as to the rights of the parties, yet she elected to do nothing more in the performance of her own obligations, and if the policy has since lapsed, any resulting damage to the respondent is to be fairly attributed solely to her own voluntary act. If she has lost her insurance, it is solely because she voluntarily elected to do so, and no resulting damage on that account can properly be charged to the appellant. We cannot escape the conviction that any damage sustained by the respondent is the result of her own unconciliatory attitude, to which we are unable to lend our approval.

The judgment should therefore be reversed, and the cause remanded for the entry of judgment in favor of the appellant.

MR. JUSTICE BONHAM concurs.